IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ROBERT MITCHELL a/k/a ROBERT LEE MITCHELL, <br> Petitioner, <br><br> vs. <br><br> WARDEN, BROAD RIVER CORRECTIONAL INSTITUTION, <br> Respondent. | C/A No. 4:06-3218-CMC-TER <br><br><br> REPORT AND RECOMMENDATION |

Petitioner, Robert Mitchell ("Petitioner/Mitchell"), is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on November 15, 2006. Respondent filed a motion for summary judgment on January 8, 2007, along with a return and supporting memorandum. The undersigned issued an order file January 11, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. Petitioner filed a response on February 28, 2007.

## I. PROCEDURAL HISTORY

The procedural history as set forth by the respondent in his memorandum has not been seriously disputed by the petitioner in his response. Therefore, the undersigned will set out the

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

undisputed procedural history as set forth by the respondent.

Petitioner is currently incarcerated in the Broad River Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Barnwell County Clerk of Court. Petitioner was indicted in the May 1995 term of the grand jury for murder, grand larceny of a vehicle, and robbery. Petitioner was represented by Walter Bedingfield, Esquire.

On January 30, 1997, petitioner pleaded guilty to murder before the Honorable Costa Pleicones who sentenced petitioner to confinement for life. Petitioner filed, but failed to timely serve a Notice of Appeal. Therefore, the South Carolina Supreme Court issued an Order of Dismissal, dismissing the appeal, on March 21, 1997. The Remittitur was sent down on April 8, 1997.

On May 12, 1997, petitioner filed an application for Post-Conviction Relief ("PCR). The State filed a Return on July 24, 1997. The Honorable Howard P. King held an evidentiary hearing on August 5, 1999. Petitioner was present and represented by Thomas W. Weeks, Esquire. The state was represented by Assistant Attorney General Matthew M. McGuire. At the hearing, petitioner proceeded on the following grounds:

1.    Ineffective assistance of counsel.
2.    Involuntary guilty plea.

Petitioner testified on his own behalf. The State presented the testimony of trial counsel Bedingfield. After the hearing, Judge King issued an Order of Dismissal dated October 26, 1999. (App. pp. 102-107).

Petitioner timely filed and served with the South Carolina Supreme Court a notice of appeal from Judge King's Order. Chief Attorney Daniel T. Stacey of the South Carolina Office of Appellate Defense, was appointed to represent petitioner in his PCR appeal. On May 1, 2000, Stacy filed a

*Johnson* Petition for Writ of Certiorari, and Petition to be Relieved as Counsel, in which he raised the following issue on behalf of petition:

> Whether petitioner pleaded guilty knowingly, intelligently, and voluntarily when he was aware of the sentencing consequences of his plea to murder?

By Order dated July 20, 2001, the South Carolina Supreme Court denied the petition for writ of certiorari. A remittitur dismissing the appeal was filed on August 9, 2001.

On March 4, 2002, petitioner filed his Petition for Writ of habeas Corpus. Mitchell v. State, C/A No.: 4:02-813-CMC-TER. In this pro se petition, he raised the following grounds for relief:

Ground One:   Guilty plea unlawfully induced.

> Plaintiff thought he was pleading to 30 years. App. p. 98, lines 2-6 and App. p. 4, lines 1-5 (thirty year provision.) Plaintiff has NOS and is retarded when he heard these statements he did not fully understand them.

Ground Two:  Coerced confession.

> Ed Carroll told Mr. Mitchell he would get him help if he confessed. App. p. 80, lines 7, Mr. Bedingfield told Plaintiff he was dying and could get help if he pled guilty. App. p. 125, Letter, App. p. 86, line 10-16. Ms. Morgan Statement, App. p. 24, lines 7-14.

Ground Three: Self-incriminating.

> Officers, Prosecutor, Attorney for Plaintiff and Judge all knew Mr. Mitchell is retarded and slow. They used this to there (sic) advantage and still allowed him to plea.

Ground Four: Favorable evidence.

> An Order was made to test Mr. Mitchell for criminal responsibility. See App. p. 118. Pertinent statement then look at App. p. 8, lines 3-10/App. p. 139 ordered on 1/20/95 for criminal responsibility no

expert witness was call (sic) during his trial.

Respondents made a Return and Motion for Summary Judgment dated May 1, 2002. On June 18, 2002, petitioner filed an "Motion for Voluntary Dismissal." United States District Judge Cameron McGowan Currie filed an Order dated August 5, 2002, granting the motion for voluntary dismissal and dismissing the action without prejudice.

Petitioner next filed a second Application for Post-Conviction Relief on June 11, 2003. The State filed a Return on January 30, 2004, and an undated amended return. Petitioner filed an "Opposition to State's Amended Return" on August 4, 2004. A motion hearing was held in the matter on August 24, 2004. Petitioner was present at the hearing and was represented by Peter Kumala, Esquire. Paula Margargle, Esquire, of the South Carolina Attorney General's Office, represented the State. At the hearing before the Honorable Reginald I. Lloyd, the state moved to dismiss the APCR because it was both time barred and successive to the previous application. After the hearing, Judge Lloyd issued an Order of Dismissal With Prejudice, dated November 2, 2004, summarily denying and dismissing Petitioner's application for failure to file within the statute of limitations and as a successive application. (App. pp. 110-114).

Acting Deputy Chief Attorney Wanda H. Carter of the South Carolina Office of Appellate Defense, was appointed to represent petitioner in this APCR appeal. On June 17, 2005, Carter filed a *Johnson* Petition for Writ of Certiorari, and Petition to be Relieved as Counsel, in which she raised the following issue on behalf of petitioner:

> The PCR court erred in denying petitioner's allegation that he did not voluntarily waive his right to a direct appeal in the case.

On August 31, 2006, petitioner filed a Petition for Appeal Bond. The State's Return to Petition for

Appeal Bond was filed on September 11, 2006. Respondent asserts that no further action has been taken in this matter. However, petitioner argued in his response in opposition that the appeal was denied by the South Carolina Supreme Court and attached a copy of the Order dated October 4, 2006.

## II. HABEAS ALLEGATIONS

Petitioner raised the following allegations in his *pro se* habeas petition:

> Ground One:   Ineffective assistance of counsel due to my trial lawyer failing to file my direct appeal as I asked him to do.
>
> Ground Two:   The court lacked subject matter jurisdiction to accept my guilty plea due to a violation of a § 16-3-26(B)(1).

(Petition).

## III.  SUMMARY JUDGMENT

On January 8, 2007, respondent filed a return and memorandum of law in support of his motion for summary judgment. Petitioner filed a response.

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services,

901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).  The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

## IV.  STANDARD OF REVIEW

Since Mitchell filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. §2254(d), as amended.  Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998); Green v. French, 143 F.3d 865 (4th Cir. 1998).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the state court application of Supreme Court law. See O'Brien v. DuBois, 145 F.3d 16 (1st Cir. 1998) ("the AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review."). Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d). See Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1). Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts.

### V.   DISCUSSION AS TO STATUTE OF LIMITATIONS

The respondent asserts that the petitioner's claims must be dismissed as untimely.

Specifically, respondent contends the petitioner's federal habeas petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the AEDPA. Respondent argues as follows, quoted verbatim:

> Since Petitioner did not properly perfect the appeal of his guilty pleas and sentences, his conviction was finalized on March 21, 1997, the day the S.C. Supreme Court issued its Remittitur dismissing the appeal. Because Petitioner did not properly file a direct appeal, the ninety (90) day period for seeking certiorari from the United States Supreme Court is not included. *See, e.g.* **Harris v. Hutchinson**, 209 F.3d 325 (4th Cir. 2000) (direct review concludes at expiration of time for seeking certiorari from United States Supreme Court);28 U.S.C. § 1257 (United States Supreme Court can only review on certiorari the final judgments of "highest court of a state"); U.S. Sup. Ct. R. 10(b) (certiorari considered where "state court of last resort" has decided important federal question); U.S. Sup. Ct. R. 13 (time period for petition for writ of certiorari is 90 days from decision or judgment of state court of last resort).
>
> Petitioner therefore had until March 22, 1998 to file his federal habeas corpus action unless the period was at any time tolled. *See, e.g.* **Hernandez v. Caldwell**, 225 F.3d 435 (4th Cir. 2000); **Harris**, *supra*; **Brown v. Angelone**, 150 F.3d 370 (4th Cir. 1998).
>
> Petitioner did not file his APCR1 until May 12, 1997, so fifty-one (51) days of non-tolled time ran since the period of limitations began on March 22, 1997. The period of limitations was tolled during the pendency of the APCR until no later than August 9, 2001, when the South Carolina Supreme Court issued the Remittitur from the Order denying certiorari on the APCR Order of Dismissal. *See, e.g.* **Ott v. Johnson**, 192 F.3d 510 (5th Cir. 1999) (tolling does not include 90 days for United States Supreme Court certiorari petition from final denial by state's highest court of collateral action); **Harris v.Hutchinson**, 209 F.3d 325 (4th Cir. 2000) (running clock from when state appellate court denied leave to appeal denial of state post-conviction petition).
>
> Petitioner filed his first petition for a writ of habeas corpus on March 4th, 2002. However, § 2244(d)(2) does not toll the limitations period during the pendency of a federal habeas petition. ***Duncan v. Walker***, 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). (Application

> for federal habeas corpus review is not "application for State post-conviction or other collateral review," within meaning of tolling provision of the AEDPA; thus, the time for filing federal habeas petition was not tolled during pendency of petitioner's first federal habeas petition).
>
> Petitioner's successive PCR Application (2003-CP-06-125) was not filed until June 11, 2003, or three hundred and nine (309) days after the United States District Court granted Petitioner's motion for voluntary dismissal and dismissed the action without prejudice on August 5, 2002. However, the 2003 APCR, while still pending, is clearly not "properly filed" under ***Pace v. DiGuglielmo***, 504 U.S. 408, 125 S.Ct. 1807, 1814 (2005) ("we hold that time limits, no matter their form, are 'filing' conditions. Because Petitioner's APCR2 must be rejected as untimely, he is not entitled to statutory tolling under § 2244(d)(2)") because it is successive and barred by the state statute of limitations for PCR applications. *See* S.C. Code Ann.§ 17-27-45(A) (Supp. 2005).
>
> Therefore, even if somehow the filing of Petitioner's first federal habeas corpus application somehow tolled the provisions of the AEDPA, when the non-tolled time periods are added together, almost five years of non-tolled time exists. . .

(Memorandum).

The applicable law is as follows: The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions.[2] Subsection (d) of the statute now reads:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the

---

[2] Prior to this amendment there was no statute of limitations. Habeas Rule 9(a) allowed dismissal only where the state could show it had been prejudiced by a delay in filing. Duarte v. Hershberger, 947 F. Supp. 146, 148, n.2 (D.N.J. 1996).

>  latest of–
>
>> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>  (2)  The time during which a "properly filed" application for State post- conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. (Emphasis added).

As stated under the procedural history, a direct appeal was not properly perfected in that a direct appeal was filed but not timely served. Therefore, the conviction became final on March 21, 1997, when the South Carolina Supreme Court issued its remittitur dismissing the appeal. Therefore, petitioner had until March 22, 1998, to file his federal habeas corpus action unless the time limitation was tolled.

Petitioner filed his first PCR application on May 12, 1997. Therefore, fifty-one (51) days of non-tolled time expired. The period of limitations was tolled during the pendency of the PCR application. The South Carolina Supreme Court issued its Remittitur from the Order denying

certiorari on August 9, 2001. Petitioner filed his first petition for a writ of habeas corpus on March 4, 2002. However, the time period during which the petition for writ of habeas corpus was pending did not toll the limitations period. As stated previously, petitioner filed a motion for voluntary dismissal on June 18, 2002. Judge Currie entered an order on August 5, 2002, granting the motion for voluntary dismissal and dismissing the action without prejudice.

Petitioner filed a second PCR application on June 11, 2003, which was dismissed by Order of Dismissal on November 2, 2004, for failure to file within the state statute of limitations and as a successive application. The PCR order was appealed on June 17, 2005, and petitioner filed a petition for appeal bond on August 31, 2006. Contrary to respondent's memorandum that the petition for writ of certioria from the second PCR is still pending, petitioner has provided a document revealing that the South Carolina Supreme Court denied the petition. (Document #13, exhibit P). However, the filing of a successive PCR application which is dismissed as barred by the state statute of limitations and as successive does not toll the statute of limitations for federal habeas purposes in that it was not "properly filed." Petitioner filed this petition for writ of habeas corpus relief on November 15, 2006.

Therefore, if the time periods are aggregated, the habeas petition was filed outside of the statute of limitations. Fifty-one (51) days of non-tolled time expired between finalization of his conviction and the filing of his first PCR. Two hundred and seven (207) days expired between the conclusion of his first PCR and the filing of his first federal habeas corpus application. Thus, two hundred and fifty-eight days had already expired. The filing of his first petition for writ of habeas corpus does not toll the limitations period during the pendency of a federal habeas petition. As stated, the habeas petition was voluntarily dismissed and an order was issued dismissing the petition without prejudice. Over four years expired between the time the first habeas petition was dismissed on

August 5, 2002, and the filing date of his second federal petition for habeas corpus on November 15, 2006. The filing of a successive PCR application that was barred by the state statute of limitations does not toll the limitations period because it was not "properly" filed. Therefore, this petition for writ of habeas corpus is barred by the statute of limitations.

Based on the above, petitioner's petition for federal habeas corpus relief was filed outside of the statute of limitations and should be dismissed.

In his response in opposition, petitioner asserts that his petition should not be dismissed. Petitioner argues that there are genuine issues of material fact that preclude summary judgment. Specifically, petitioner asserts the following, quoted verbatim:

> The affidavits of the petitioner and the respondent is squarely contradictory as to if the petitioner has both a application for post-conviction relief and writ for habeas corpus ongoing at the same time: whether petitioner is entitled to statutory tolling under 28 U.S.C. 2244(D)(2): whether the hearing held on August 24, 2004 was a "motion hearing" or an evidentiary hearing: whether successive applications for post conviction relief are allowed in South Carolina in rare procedural violations under Section 17-27-90 of the South Carolina Code of Laws; whether a guilty plea counsel renders prejudicial ineffective assistance of counsel by failing to file for a requested direct appeal; whether it is a violation of a capitally indicted criminal defendants' right to counsel to have only a single attorney and is petitioners' case worthy of plain error review. There is clearly a multitude of genuine issues of fact.

(Response).

Petitioner also responded that his second PCR appeal was denied. Petitioner attached a copy of the denial by the South Carolina Supreme Court dated October 4, 2006.

In the case of Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000), the Fourth Circuit aggregated time periods to conclude that a federal habeas petition was time barred under 28 U.S.C. § 2244(d). In Harris, the Fourth Circuit stated:

> Thus, for Harris, the one-year limitation period imposed by §2244(d)

>commenced on April 24, 1996. Ten-and-one-half months later, on March 12, 1997, Harris filed his petition for state post-conviction review, which suspended the running of the one-year limitation period. This petition remained "pending" in state courts until January 7, 1998, when the Maryland Court of Appeals denied Harris' application for leave to appeal the denial of his petition. At this point, the clock began running again on the one-year limitation period, expiring one-and-one-half months later, in February 1998. Harris did not file his federal habeas petition until July 22, 1998, six months after his one-year period had expired. Therefore, the petition was time-barred under 28 U.S.C. § 2244(d).

Harris, 209 F.3d at 327.

Additionally, there is no evidence that warrants equitable tolling. In the case of Rouse v. Lee, 339 F.3d 238 (4th Cir. 2003), the Fourth Circuit held the following:

>Congress enacted AEDPA to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases ... and to further the principles of comity, finality, and federalism." *Woodford v. Garceau,* --- U.S. ----, 123 S.Ct. 1398, 1401, 155 L.Ed.2d 363 (2003) (internal citations and quotation marks omitted). Nevertheless, we have held that the AEDPA statute of limitations is subject to equitable tolling. *Harris v. Hutchinson,* 209 F.3d 325, 330 (4th Cir.2000). As we held in *Harris,* however, rarely will circumstances warrant equitable tolling:
>
>>[A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result.
>
>Id. Principles of equitable tolling do not extend to garden variety claims of excusable neglect. *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112

> L.Ed.2d 435 (1990) (equitable tolling did not apply where petitioner's lawyer was absent from the office when the EEOC notice was received, and petitioner filed within 30 days of the date he personally received notice). Equitable tolling "is appropriate when, but only when, 'extraordinary circumstances beyond [the petitioner's] control prevented him from complying with the statutory time limit.' " *Spencer v. Sutton,* 239 F.3d 626, 630 (4th Cir.2001) (quoting *Harris,* 209 F.3d at 330). Accordingly, under our existing "extraordinary circumstances" test, Rouse is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time.
>
> The district court held that although the 1-year AEDPA limitations period is subject to equitable tolling, a "mistake of counsel does not serve as a ground for equitable tolling" as a matter of law. (J.A. at 328.) The court held that the circumstance that prevented Rouse from filing on time, his former counsel's "slight miscalculation by relying on Fed.R.Civ.P. 6(e)," was not an extraordinary circumstance beyond Rouse's control, and thus, that equitable tolling did not apply. (J.A. at 327-31.) The district court also found that Rouse's health during the limitations period did not warrant equitable tolling because he was not in "any way incompetent for a substantial part of the [limitations period]." (J.A. at 331.)

Id. at 246-247.

Based on the above reasons, the undersigned finds that the respondent's motion for summary judgment (document #7) should be granted as the petitioner's habeas corpus petition is barred by the statute of limitations.

## VI.  CONCLUSION

As set out above, a review of the record indicates the petitioner's federal habeas corpus petition should be dismissed as it is barred by the statute of limitations. It is, therefore,

RECOMMENDED that respondents' motion for summary judgment (document #7) be

GRANTED in its ENTIRETY, and the petition be dismissed without an evidentiary hearing.

                                                        Respectfully Submitted,

                                                        s/Thomas E. Rogers, III
                                                        Thomas E. Rogers, III
                                                        United States Magistrate Judge

June 14, 2007
Florence, South Carolina

                **The parties' attention is directed to the important notice on the next page.**